JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ORANGE COUNTY COASTKEEPER, a California non-profit corporation,

            Plaintiff,

     vs.

Griswold Industries,

           Defendant.

Case No. 8:24-cv-02162-FWS (ADSx)

**CONSENT DECREE**

**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* and Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*)**

## CONSENT DECREE

The following consent decree ("Consent Decree") is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper") and Griswold Industries d/b/a Cla-Val Co. ("Defendant" or "Cla-Val"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively are the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and restoration of the environment, the wildlife, and the natural resources of all waters of California, including Newport Bay and the Santa Ana River;

**WHEREAS,** Cla-Val owns and operates an industrial facility that manufactures valves located at 1701 - 1741 Placentia Avenue, Costa Mesa, CA 92627 ("Facility"). Activities at the Facility include ferrous and non-ferrous metal melting, forming of sand molds and cores, pouring metal, and trimming of raw castings. Finished castings are then machined, assembled, finished, tested, and shipped from the Facility;

**WHEREAS**, the Standard Industrial Classification ("SIC") codes applicable to the Facility include 3325 (steel foundry), 3369 (nonferrous foundry), 3324 (steel investment foundry), and 3491 (industrial valves).

**WHEREAS**, Coastkeeper alleges that Cla-Val's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402 and Resource Conservation and Recovery Act ("RCRA") Section 7002. 33 U.S.C. §§ 1311(a), 1342; 42 U.S.C. § 6972(a)(1)(B);

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as subsequently amended by Order 2018-0028-DWQ (effective July 1,

2020) (collectively, as amended, and as may be subsequently amended from time to time, the "Storm Water Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA");

**WHEREAS,** the Storm Water Permit requires all permittees, including Cla-Val, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs or other control measures as necessary to comply with any and all applicable receiving water limitations, including the California Toxics Rule (40 C.F.R. § 131.38), and/or other requirements set forth in the Permit, including as of July 1, 2020, compliance with the Permit's water-quality based numeric effluent limits ("NELs"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on February 26, 2024, Coastkeeper issued a notice letter (the "Notice Letter") to Cla-Val, their registered agents, select corporate officers, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board (the "State Water Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board (the "Regional Water Board"), the Regional Administrator of EPA Region IX, the U.S. Attorney General, and the Director of the California Department of Resources Recycling and Recovery alleging violations of the Storm Water Permit, Clean Water Act, and RCRA at the Facility;

**WHEREAS**, on October 7, 2024, Coastkeeper filed a Amended Complaint against Cla-Val (the "Complaint") in the United States District Court for the Central District of California (Civil Case No.  8:24-cv-02162) (hereinafter, the "Action");

**WHEREAS**, Coastkeeper alleges Cla-Val is violating the substantive and procedural requirements of the Storm Water Permit, Clean Water Act, and RCRA;

**WHEREAS,** Cla-Val denies each of Coastkeeper's claims in the Notice Letter and the Complaint;

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, Cla-Val agrees to comply with the current version of the Storm Water Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Storm Water Permit; and

**WHEREAS**, all actions taken by Cla-Val pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A) and Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

2.  Venue is appropriate in the U.S. District Court for the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), and Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the Facility is located within this District.

3.  The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365, and Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

4.  Coastkeeper has standing to bring the Clean Water Act and RCRA claims

raised in the Notice Letter and Complaint.

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the Term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    AGENCY REVIEW AND TERM OF CONSENT DECREE

6.    Coastkeeper shall submit this Consent Decree to the United States Department of Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified mail return receipts or other tracking information, copies of which shall be provided to Cla-Val. If the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time, not to exceed thirty (30) days.

7.    Following expiration of the Federal Agencies' 45-day review period, Coastkeeper shall submit the Consent Decree to the Court for entry.

8.    The term "Effective Date" as used in this Consent Decree shall be the date of entry of this Consent Decree by the Court.

9.    This Consent Decree shall terminate three (3) years after the completion of installation of the BMPs defined in Paragraph 12 below, unless (i) an Action Plan (as hereinafter defined in Paragraph 20 below) is required per Paragraph 19 below, in which case the Consent Decree will terminate one year after complete implementation of the measures described in the Action Plan and/or (ii) if there is an ongoing, unresolved formal dispute regarding Cla-Val's compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days' notice by Coastkeeper that the dispute has been fully resolved (the occurrence of any of the above hereinafter being the "Termination Date," as applicable). The length of time between the Effective Date and the

1   Termination Date shall be the "Term."

2       10.     Notwithstanding Paragraph 9 above, if Cla-Val should cease operations or not

3   otherwise maintain activities regulated by the Permit at all or a portion of the Facility, and

4   file a Notice of Termination ("NOT") for the Facility under the Storm Water Permit before

5   the Termination Date, Cla-Val shall send Coastkeeper a copy of the proposed NOT form

6   concurrent with submittal of the same to the Regional Board. In the event of an NOT, the

7   Consent Decree will terminate, except with respect to the monetary provisions of this

8   Consent Decree, upon the Regional Water Board's approval of the NOT; provided,

9   however, that within ten (10) days of the Regional Water Board's approval of the NOT,

10  Cla-Val shall notify Coastkeeper in writing of the approval and promptly pay any

11  remaining amounts hereunder as provided herein.

12  **COMMITMENTS OF THE SETTLING PARTIES**

13      **A.     Storm Water Pollution Control Best Management Practices**

14      11.     In addition to maintaining the current BMPs at the Facility, Cla-Val shall

15  develop and implement the BMPs identified herein, as well as any other BMPs necessary

16  to comply with the provisions of this Consent Decree and the Storm Water Permit.

17  Specifically, Cla-Val shall develop and implement BMPs to prevent and/or to reduce

18  contamination in storm water discharged from the Facility consistent with BAT and BCT

19  and/or when necessary to support attainment of water quality standards ("WQS").

20      12.     Cla-Val shall develop and fully implement the following BMPs at the Facility:

21          12.1.  Investigate and document the ultimate receiving waters for stormwater

22              discharges from all portions of the Facility, and clearly incorporate Cla-

23              Val's findings into the Facility Site Map within thirty (30) days of the

24              Effective Date.

25          12.2.  Cla-Val shall implement the following source controls within thirty (30)

26              days of the Effective Date:

27

28  Consent Decree                    6                    Civil Case No. 8:24-cv-02162

12.2.1.    Ensure that all exposed dumpsters and bins have lids and/or covers. These lids/covers will cover the dumpsters and bins when material is not being actively added or removed. In the 24 hours preceding a QSE and throughout a QSE, dumpsters/bins are considered to be actively in use if material is being added or removed at least once per hour. During dry periods outside of QSEs, a dumpster/bin is considered to be actively in use if material is being added or removed at least once per 24-hour period.

12.2.2.    Repair damaged and rusted building siding on the cut off saw area of Building 2, that will be delineated on the Facility's Site Map, that allows materials to become exposed to stormwater outdoors;

12.2.3.    Place all outdoor and exposed liquid-containing drums, barrels, and totes as listed in the SWPPP and exposed to storm water on or within secondary containment;

12.2.4.    Implement a policy that requires the cleanup of any outdoor spills as soon as possible, but no later than the end of the work shift during which the spill occurred;

12.2.5.    Implement a sweeping program to sweep the entire accessible outdoor yard surface at least (1) once every other week during the dry season (May-September) ("Dry Season"), (2) once per week during the wet season (October-April) ("Wet Season"), and (3) within 24 hours of any forecasted rain event as reported by Weather Underground (https:/wunderground.com) with a 50% or greater probability of delivering at least 0.1 inch of rain. Areas of the yard that are inaccessible by a sweeper must be hand swept on the same schedule;

12.2.6.    Make good faith efforts to timely repair cracked or otherwise damaged pavement that is interfering with sweeper effectiveness annually in advance of the Wet Season, as defined above.

12.3.  Cla-Val must implement the following by July 1, 2025:

12.3.1.    Cla-Val must verify that the Aquip treatment system that is currently present at the Facility has sufficient hydraulic capacity to meet the advanced treatment design standard defined in the Storm Water Permit to treat the additional stormwater runoff generated in the catchments currently discharging via Outfalls 1 and 8-10 without negative effect on performance;

12.3.2.    If the capacity of the current Aquip treatment system is sufficient and Cla-Val elects to convey runoff from Outfalls 8, 9 and/or 10 to the existing Aquip treatment system, Cla-Val must collect that additional runoff and deliver it for treatment. If capacity of the current Aquip treatment system is not sufficient, Cla-Val must determine suitable treatment for the additional runoff that results in discharges to meet the limits in Table 1.

12.3.3.    For Outfall 11, Cla-Val must review its NEC Checklist in its SWPPP to confirm that none of the Industrial Materials or Activities listed in its NEC Checklist are, or will be in the foreseeable future, exposed to precipitation,  or comply with paragraphs 12.4.1 and 12.4.2 for outfall 11.

12.4.  Cla-Val must implement the following prior to a storm event with a 50% or greater probability of delivering at least 0.1 inch of rain at the Facility

areas that discharge through Outfalls 2, 4, 5, and 12, as defined on the Facility's Site Map by October 1, 2024:

    12.4.1.    Cla-Val must install linear media filters ("socks") in the drainage pathways to the sampling points. The media in these socks should be selected to provide the greatest potential to meet NALs (and NELs for any of the outfalls (Outfalls 2, 4, 5, and 12) that Cla-Val has not proven are not discharging to Newport Bay). This selection should be achieved by bench-scale testing of actual runoff at the Facility.

    12.4.2.    Cla-Val must develop detailed instructions to employ the filter socks properly, including processes for placement in preparation for storms, installation to avoid bypass underneath or between sections, avoidance of damage while deployed, inspection after use, and criteria for replacement and must include such instructions in its employee training under Paragraph 18.

13.    <u>Confirmation of Completion.</u> Cla-Val shall provide Coastkeeper with written documentation, including photographs, demonstrating that the required BMPs have been implemented in compliance with Paragraphs 12.1 through 12.4 above within thirty (30) days of completion in each case.

**B.    Storm Water Sampling**

14.    <u>Sampling.</u> The following storm water monitoring procedures shall be implemented at the Facility:

    14.1.    <u>Frequency.</u> During the Term of this Consent Decree and thereafter in compliance with the Storm Water Permit, Cla-Val shall collect samples from at least four (4) Qualifying Storm Events, as defined in the Storm

Water Permit ("QSEs") per Reporting Year[1] from the analytical monitoring locations described in the Facility SWPPP provided that at least four (4) QSEs occur during the applicable reporting year. Cla-Val shall sample at least two (2) QSEs during each half of the Reporting Year.

14.2.　　Documentation. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs").

14.3.　　Parameters. Subject to the provisions of Section XI.C.7 of the Permit, all samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 herein.

14.4.　　Lab. Except for pH samples, a laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the Storm Water Permit, analysis of pH shall be completed onsite using a calibrated instrument for pH in accordance with the manufacturer's instructions.

14.5.　　Detection Limits. Cla-Val shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the Storm Water Permit, whichever is lower.

14.6.　　Holding Time. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136.

14.7.　　Results. Cla-Val shall request that sample-analysis results and

---

[1] Reporting Year is defined as between July 1 – June 30

Consent Decree　　　　　　　　　　10　　　　　　　　　Civil Case No. 8:24-cv-02162

associated chain of custody forms be reported to them within thirty (30) business days of laboratory receipt of the sample.

14.8.   Reporting. No later than thirty (30) days from receipt of the complete laboratory report, Cla-Val shall (i) submit sampling results to the State Board's Stormwater Multiple Application and Report Tracking System website ("SMARTS") and (ii) provide the complete lab results to Coastkeeper. Cla-Val shall also submit the Sampling Photographs to Coastkeeper when it submits the sampling results.

**C.   Visual Observations**

15.   Storm Water Discharge Observations. During the Term of this Consent Decree, Cla-Val shall conduct visual observations during each QSE that is sampled.

16.   Non-Storm Water Discharge Observations. During the Term of this Consent Decree, Cla-Val shall conduct monthly non-storm water visual observations pursuant to the Storm Water Permit.

17.   Visual Observation Records. Cla-Val shall maintain observation records to document compliance with Paragraphs 15 and 16 above and shall provide Coastkeeper with copies of such records within fourteen (14) days of receipt of Coastkeeper's written request.

**D.   Employee Training**

18.   Within thirty (30) days of the Effective Date, Cla-Val shall develop and implement an employee training program that meets the following requirements and ensures (1) there are a sufficient number of employees at the Facility designated to achieve compliance with the Storm Water Permit and this Consent Decree (hereinafter referenced as "Designated Employees" or "DE"); (2) such Designated Employees are properly trained to perform the required activities to maintain compliance with the Storm Water Permit, the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) non-clerical Cla-Val employees at the Facility (hereinafter referenced as "ALL

Employees") receive basic information regarding storm water housekeeping and best practices (the "Training Program"). At a minimum, the Training Program shall include the following:

18.1.    <u>Non-Storm Water Discharges.</u> Designated Employees shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

18.2.    <u>The SWPPP and BMPs.</u> Cla-Val shall train all Designated Employees on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water, prevent the discharge of contaminated storm water, and ensure the proper treatment of storm water at the Facility. Designated Employees shall be trained on proper operational procedures and control measures as well as appropriate hazardous materials use and hazardous waste control and disposal procedures. All training of Designated Employees must include the requirements of the Storm Water Permit and this Consent Decree including the additional BMPs outlined in Paragraph 12 above.

18.3.    <u>Visual Observation.</u> Cla-Val shall designate and train an adequate number of Designated Employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring, as required by this Consent Decree. Such training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

18.4.  Storm Water Sampling. Cla-Val shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit. The Training Program shall include training of Designated Employees sufficient to ensure (i) proper sampling protocols, including chain of custody requirements, are followed at all times and (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

18.5.  Training Implementation. Training of at least two Designated Employees (hereinafter referenced as "Designated Trainers" or "DT," as identified in the Facility SWPPP) shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the Storm Water Permit. The Designated Trainers and/or the QISP shall provide the training set forth in this Paragraph 18.

18.6.  Language. The Training Program shall be conducted, and all training materials shall be made available in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to (i) staff comprehension of the Training Program and/or (ii) compliance with this Consent Decree and the Storm Water Permit, Cla-Val shall provide translation services at all training sessions and of all training materials.

18.7.  Training Program Frequency – DE Employees. The Training Program shall be repeated annually or more frequently as necessary to ensure all Designated Employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. Designated Employees

should, in any event, receive training prior to assuming responsibilities under the Storm Water Permit or this Consent Decree.

18.8.    Training Program Frequency – ALL Employees.  ALL Employees who have not received training shall receive initial training  to ensure they receive enough information regarding storm water housekeeping and best practices to comply with this Consent Decree and the Storm Water Permit. ALL Employees who are new shall receive this training within one year of hiring or sooner if necessary. The past training for ALL Employees does not need to be documented. Any future training of ALL Employees must be documented.

18.9.    Training Records. Cla-Val shall maintain training records to document compliance with this section and shall provide Coastkeeper with a copy of such records within fourteen (14) days of receipt of Coastkeeper's written request.

**E.    Reduction of Pollutants in Discharges**

19.    Storm Water Contaminant Reduction. Cla-Val shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values"). Failure to achieve Table 1 Values shall not be deemed a violation of the Permit or this Consent Decree so long as Cla-Val continues to make timely and diligent efforts as required by the Permit and herein to further reduce the level of pollutants in the discharges. Starting in the first half of the 2025-2026 Reporting Year (i) any two Permit NEL exceedances and/or, separately, (ii) any two exceedances of the same parameter of any Table 1 Value at any one Discharge Location, or (iii) three exceedances of the same Table 1 Value from any combination of discharge locations  in the annual Reporting Year shall trigger the Action Plan requirements set forth in Paragraph 20 below. Because for discharges to Newport Bay there are both NELs and

NALs for lead, copper, and zinc, an exceedance of both an NEL and NAL for the same parameter, shall be considered a single exceedance. In the event that Cla-Val is in the process of implementing additional structural BMPs not already required by this Consent Decree prior to the 2025-2026 Reporting Year and the Action Plan requirements are triggered, the Parties may agree that an Action Plan and Action Plan payment are not required at the sole discretion of Coastkeeper. The Permit NELs noted below only apply to discharges to Newport Bay.

**Table 1. Numeric Values for Storm Water Discharges[1]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Total Suspended Solids | 100 mg/L | Permit NAL |
| Oil and Grease | 15 mg/L | Permit NAL |
| Total Recoverable Zinc | 0.095 mg/L | Permit NEL |
| Total Recoverable Copper | 0.00578 mg/L | Permit NEL |
| Total Recoverable Aluminum | 0.75 mg/L | Permit NAL |
| Total Recoverable Cadmium | 0.0053 mg/L | Permit NAL |
| Total Recoverable Nickel | 1.02 | Permit NAL |
| Total Recoverable Iron | 1.0 mg/L | Permit NAL |
| Total Recoverable Lead | 0.221 mg/L | Permit NEL |
| Nitrate + Nitrite (as Nitrogen) | 0.68 mg/L | Permit NAL |
| Dissolved Chromium (VI) | 0.016 mg/L | California Toxics Rule |
| Zinc, Total | 0.26 mg/L | Permit NAL |
| Copper, Total | 0.0332 mg/L | Permit NAL |
| Lead, Total | 0.262 mg/L | Permit NAL |

Coastkeeper agrees if any Table 1 parameter is not detected, from any discharge location in three consecutive QSEs, then that parameter will be removed from Table 1 in this Consent Decree for the remainder of its Term for that specific discharge location.[2]

20.    <u>Action Plan.</u> In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to Paragraph 19 above, Cla-Val shall prepare and

---

[2] Not detected shall be identified as either non-detect ("ND") or a value less than the laboratory detection limit.

submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the parameter in question during the next Reporting Year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 following the sample results that triggered the Action Plan. No more than one Action Plan will be required in any given year.

    20.1.    <u>Requirements.</u> Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including but not limited to: pavement repair for areas with significant degradation, improved storm water treatment or other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 following the submittal of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Coastkeeper shall have discretion to waive the Action Plan Requirements of this paragraph.

    20.2.    <u>Action Plan Review.</u> Coastkeeper shall have thirty (30) days upon receipt of Cla-Val's Action Plan to provide Cla-Val with comments. Within thirty (30) days of receiving Coastkeeper's comments on an Action Plan, Cla-Val shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes

as to the adequacy of the Action Plan and/or Cla-Val's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

21.    When an Action Plan is completed, Cla-Val shall revise the Facility's SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Cla-Val shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in Paragraphs 24 and 25 below.

22.    Action Plan Payments. If Cla-Val is required to submit an Action Plan to Coastkeeper in accordance with Paragraphs 19 and 20 above, Cla-Val shall make a one-time payment of four thousand four hundred forty-four dollars and forty-four cents ($4,444.44) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

**F.    Storm Water Pollution Prevention Plan**

23.    SWPPP.  Within thirty (30) days of the Effective Date, Cla-Val shall amend the Facility's SWPPP to incorporate the requirements of the Storm Water Permit and this Consent Decree, which include but are not limited to the following:

23.1.    Sign and certify the Facility's SWPPP;

23.2.    Update the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree, including the name of the person heading the program and positions responsible for specific areas of compliance (*e.g.*, Safety Coordinator, collecting storm water samples) and the procedures to identify alternate team members to implement the SWPPP and to conduct required monitoring when the regularly assigned team members are temporarily unavailable;

23.3.    Update Facility BMPs as set forth in this Consent Decree within the time periods indicated above in Paragraph 12;

23.4.    Revise the pollutant source assessment to include all pollutants likely to be present at the Facility including, but not limited to, each of the pollutants identified in Table 1 of this Consent Decree;

23.5.    Revise the monitoring plan to address all pollutants identified in the pollutant source assessment, including, but not limited to, each of the pollutants identified in the pollutant source assessment, including, but not limited to, each of the pollutants identified in Table 1 of this Consent Decree;

23.6.    If applicable, include a list of materials that have spilled or leaked from the Facility, including their location(s), characteristics, and approximate quantities, and preventative measures taken to ensure spills or leaks of the material(s) do not reoccur; and

24.    Revising the SWPPP. Cla-Val shall revise the Facility's SWPPP if there are any significant changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at the Facility, whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

25.    Commenting on Revised SWPPPs. Cla-Val shall submit each revised SWPPP to Coastkeeper for review and comment within thirty (30) days of its completion. Coastkeeper shall provide comments, if any, to Cla-Val within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, Cla-Val shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Cla-Val's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of

1    this Consent Decree, set out in Section III below.

2        **G.    Compliance Monitoring and Reporting**

3        26.    <u>Annual Site Inspections.</u> Coastkeeper and its representatives may conduct one

4    (1) wet weather site inspections and one (1) dry weather site inspections per year at the

5    Facility during the Term of this Consent Decree. In the event of a dispute between the

6    Settling Parties regarding Cla-Val's compliance with this Consent Decree and provided a

7    site inspection would be relevant to resolving such dispute, the Settling Parties agree to

8    meet and confer regarding an additional site inspection. Plaintiff shall not unreasonably

9    request, and Defendant shall not unreasonably deny the additional site inspection.

10        26.1.    The site inspections shall occur Monday through Friday, excluding

11        Federal and religious holidays, between 9:00 a.m. and 4:00 p.m.

12        Coastkeeper shall provide Cla-Val with no less than seventy-two (72)

13        hours' notice before any site inspection. Notice will be provided via

14        electronic mail to the notice recipient(s) designated in Paragraph 42

15        below. For any site inspection requested to occur in wet weather,

16        Coastkeeper shall be entitled to adjust timing during normal business

17        hours or reschedule the inspection for an alternative date during normal

18        business hours if the forecast changes and anticipated precipitation

19        appears unlikely, and thus frustrates the purpose of visiting the Facility

20        in wet weather. As used throughout this Paragraph 26.1, "normal

21        business hours" shall mean and refer to the Facility operating hours as

22        identified in the Facility's SWPPP. For any site inspection requested to

23        occur during dry weather, either party shall have the option to

24        reschedule within a reasonable time-period, not to exceed thirty (30)

25        days from the requested date. The Parties agree to meet in good faith to

26        accommodate the needs and schedules of both Parties and their

27        representatives to facilitate any dry weather inspection.

28    Consent Decree           19           Civil Case No. 8:24-cv-02162

26.2.    During the site inspections, Coastkeeper shall be allowed access to the Facility's SWPPP, storm water visual observation records, storm water employee training records, and other storm water monitoring records, reports, Sampling Photographs (as defined above), and storm water sampling data for the Facility.

26.3.    Coastkeeper shall limit inspection participants to three individuals, all of whom agree to execute the attached Release and Waiver (Exhibit A) prior to entering the Facility. During the site inspections, Coastkeeper may inspect and collect samples of storm water discharges from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. Plaintiff shall not disclose any information (e.g., photos, videos, sample data) obtained as a result of a Site Inspection to any third party, except that such information may be disclosed to: (a) a consultant for the limited purpose of assessing the Facility's storm water pollution control program; and/or (b) the District Court as part of enforcing compliance with this Consent Decree. A certified California laboratory shall analyze samples collected by Coastkeeper and copies of the lab reports shall be provided to Cla-Val within five (5) business days of Coastkeeper's receipt. Within ten (10) business days after a site inspection, Coastkeeper shall provide Cla-Val with a duplicate set of any photographs and videos that were taken.

27.    <u>Reporting and Document Provision.</u> During the Term of this Consent Decree, Cla-Val shall provide Coastkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related to Permit compliance at the Facility that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports

and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any documents, written communications, and/or correspondence related to Cla-Val's compliance with the Storm Water Permit received by Cla-Val from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within ten (10) business days of receipt by Cla-Val.

**H. Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.**

28.    <u>Compliance Monitoring and Oversight.</u> Cla-Val agrees to partially defray costs associated with Coastkeeper's monitoring of Cla-Val's compliance with this Consent Decree in the amount of forty thousand dollars ($40,000). Such payment shall be made within thirty (30) days of the Effective Date. Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

29.    <u>Environmentally Beneficial Project.</u> To remediate the environmental harms alleged to have resulted from the allegations in the Notice Letter and Complaint, Cla-Val agrees to make a payment of fifty thousand dollars ($50,000) to the Environmental Nature Center, 1601 E. 16th Street, Newport Beach, California 92663. Cla-Val shall make such a payment within thirty (30) days of the Effective Date. Cla-Val shall provide Coastkeeper with a copy of such payment and copy Coastkeeper and its attorneys on any related correspondence.

30.    <u>Coastkeeper's Fees and Costs.</u> To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating resolution of this matter, Cla-Val shall pay a total of one hundred sixty thousand dollars. ($160,000) within thirty (30) days of the Effective Date, delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110,

Costa Mesa, CA 92626, unless made via wire transfer.

31. <u>Stipulated Payment.</u> For any missed deadline, Coastkeeper shall promptly notify Cla-Val in writing of the missed deadline and provide Cla-Val no fewer than five (5) business days to cure. Cla-Val shall make a stipulated remediation payment of $1,000 (One Thousand Dollars) for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties or cured upon notice by Coastkeeper. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Cla-Val's discharges and shall be made to the Environmental Nature Center identified above and delivered via check or wire transfer. Cla-Val agrees to make the stipulated payment within thirty (30) days of the missed deadline. Cla-Val shall provide Coastkeeper with a copy of each such payment at the time it is made.

## II. DISPUTE RESOLUTION

32. <u>Court Enforcement Authority.</u> This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing the terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

33. <u>Meet and Confer.</u> The Settling Parties shall at all times work informally in good faith to address any issues that might arise concerning Cla-Val's compliance with the Storm Water Permit, the Clean Water Act, and/or RCRA occurring or arising after the Effective Date of the Consent Decree, however; a Settling Party shall be able to invoke the dispute resolution procedures of this Section III by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) calendar days from the date of the notice in an attempt to fully resolve

the dispute within thirty (30) days. The Settling Parties may, but are not required to, elect to extend these time periods in an effort to resolve the dispute without court intervention.

34.    <u>Formal Resolution.</u> If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above, the Settling Party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

35.    <u>Fees and Costs.</u> If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d), Section 7002(e) of RCRA, 42 U.S.C. § 6972(e), applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**III.    <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

36.    <u>Coastkeeper's Release.</u> Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Cla-Val and each of their current and former officers, directors, managers, members, employees, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives of and from, from and waives all claims which were or could have been asserted in Coastkeeper's Notice Letter and Complaint up to and including the Termination Date of this Consent Decree.

37.    <u>Cla-Val's Release.</u> Upon the Effective Date of this Consent Decree, Cla-Val, on their own behalf and on behalf of their current and former officers, directors, employees,

members, and each of their successors and assigns, and their agents, attorneys, and other

representatives, hereby release Coastkeeper (and its current and former officers, directors,

employees, members, parents, subsidiaries, and affiliates, and each of their successors and

assigns, and its agents, attorneys, and other representatives) of and from, and waives all

claims which arise from or pertain to this action, including all claims for fees (including

fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed

for matters related to, or which could have been asserted in response to, Coastkeeper's

Complaint up to and including the Termination Date of this Consent Decree, except for

fees, costs, expenses or any other sum incurred or claimed pursuant to Paragraph 34 of this

Consent Decree.

## IV.   **MISCELLANEOUS PROVISIONS**

38.   <u>No Admission of Liability.</u> The Parties enter into this Consent Decree for the

purpose of avoiding prolonged and costly litigation on disputed claims.  Neither this

Consent Decree, the implementation of additional BMPs, nor any payment made pursuant

to this Consent Decree shall constitute or be construed as a finding, adjudication,

admission, or acknowledgment of any fact, law, or liability, nor as an admission of

violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses

it may have to any alleged violations that may be raised in the future.

39.   <u>Force Majeure.</u> No Settling Party shall be considered to be in default in the

performance of any of its respective obligations under this Consent Decree when

performance becomes impossible due to an event of Force Majeure. Force Majeure is any

event arising from: war; fire; earthquake; windstorm; flood or natural catastrophe; civil

disturbance; vandalism; pandemic or public health threat; sabotage or terrorism; restraint

by court order or public authority or agency; or action or non-action by, or inability to

obtain the necessary authorizations or approvals from, any governmental agency. A Force

Majeure shall not include normal inclement weather, economic hardship, inability to pay,

or employee negligence. Any Settling Party seeking to rely upon this paragraph to excuse

or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and that despite exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

40. <u>Construction.</u> The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, RCRA, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41. <u>Choice of Law.</u> The laws of the United States shall govern this Consent Decree.

42. <u>Severability.</u> If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

43. <u>Correspondence.</u> All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

<u>If to Plaintiff:</u>

Orange County Coastkeeper
Attn: Legal Department
Email: Sarah@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

If to Cla-Val:

Ruben Castellon
Email: rcastellon@raflawgroup.com
RAF Law Group
133 Vista Lane
Watsonville, CA  95076


With a copy to:

Griswold Industries dba Cla-Val Co.
Attention: Martin Pickett and Ryan Pickett
Email: mpickett@cla-val.com, rpickett@cla-val.com
1701 Placentia Avenue
Costa Mesa, CA  92627


Any change of address or addresses shall be communicated in the manner described above for giving notices. Notifications of communications shall be deemed submitted immediately after receipt via email or the next business day after having been deposited with U.S. mail or courier service.

44.    Effect of Consent Decree. Nothing in this Consent Decree shall be construed to affect or limit in any way Cla-Val's obligation to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree. Compliance with this Consent Decree shall not be deemed to constitute compliance with the Storm Water Permit, the Clean Water Act, RCRA, or any other law, rule, or regulation.

45.    Cla-Val Assignment or Sale of Property. Subject only to the express conditions contained in this Consent Decree, all the rights, duties, and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Cla-Val transferee or assign ("Cla-Val Assignee") will continue industrial operations at the Facility, Cla-Val shall

1   notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the

2   Assignment Notice") and within ten (10) days following the Assignment Notice, Cla-Val

3   will provide Coastkeeper with a written assignment and assumption duly executed by Cla-

4   Val and the Cla-Val Assignee assigning Cla-Val's obligations under this Consent Decree

5   to the Cla-Val Assignee. In the event Cla-Val transfers, sells, or otherwise disposes of the

6   Facility and underlying real property, Cla-Val shall notify Coastkeeper ten (10) days in

7   advance of the proposed transfer, sale, or disposition (the "Property Transfer Notice") and

8   within ten (10) days following the Property Transfer Notice, Cla-Val will provide

9   Coastkeeper with a written assignment duly executed and acknowledged by Cla-Val and

10   the Facility transferee ("Facility Transferee") assigning Cla-Val's obligations under this

11   Consent Decree to the Property Transferee.

12       46.   <u>Counterparts.</u> This Consent Decree may be executed in any number of

13   counterparts, all of which together shall constitute one original document. Telecopy, email

14   of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be

15   originally executed counterparts of this Consent Decree.

16       47.   <u>Modification of the Consent Decree.</u> This Consent Decree, and any provisions

17   herein, may not be changed, waived, discharged, extended, or terminated unless by a

18   written instrument, signed by the Settling Parties.

19       48.   <u>Full Settlement.</u> This Consent Decree constitutes a full and final settlement of

20   this matter.

21       49.   <u>Negotiated Settlement.</u> The Settling Parties have negotiated this Consent

22   Decree and agree that it shall not be construed against the party preparing it but shall be

23   construed as if the Settling Parties jointly prepared this Consent Decree, and any

24   uncertainty and/or ambiguity shall not be interpreted against any one party.

25       50.   <u>Integration Clause.</u> This is an integrated Consent Decree. This Consent

26   Decree is intended to be a full and complete statement of the terms of the agreement

27   between the Settling Parties and expressly supersedes any and all prior oral or written

28

agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51. <u>Authority.</u> The undersigned representatives for each Settling Party each certify s/he is fully authorized by the Settling Party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

52. <u>Validity.</u> The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

[Remainder of this page intentionally left blank]

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____October 8_____, 2024          By: _____
                                          Garry Brown
                                          Orange County Coastkeeper

Dated: _____October 7_____, 2024          By: _____
                                          Name: _Ryan Pickett_____
                                          Title: _Vice President of Operations_

APPROVED AS TO FORM

                                          ORANGE COUNTY COASTKEEPER

Dated: _____October 8_____, 2024          By: _____
                                          Sarah Spinuzzi
                                          Attorney for Plaintiff

Dated: _____October 8_____, 2024          By: _____
                                          Ruben A. Castellón
                                          Attorney for Defendant

**IT IS SO ORDERED.**                     UNITED STATES DISTRICT COURT
                                          CENTRAL DISTRICT OF CALIFORNIA

Dated: _____**November 27**_____, 2024    _____
                                          Honorable **Fred W. Slaughter**



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-06700

_Law and Policy Section_                                      _Telephone (202) 514-1442_
_P.O. Box 7415_                                               _Facsimile (202) 514-4231_
_Washington, DC  20044-7415_

November 19, 2024

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
Central District of California
First Street Courthouse
350 West 1st Street
Los Angeles, California 90012

   Re:  _Orange County Coastkeeper v. Griswold Industries_ (C.D. Cal.), Case No. 8:24-
      cv-2162

Dear Clerk of Court:

   I am writing to notify you that the United States has reviewed the proposed consent
judgment in this action and does not object to its entry by this Court.

   On October 8, 2024, the Citizen Suit Coordinator for the Department of Justice received a
copy of the proposed consent judgment in the above-referenced case for review pursuant to the
Clean Water Act, 33 U.S.C. § 1365(c)(3).[1]  This provision provides, in relevant part:

   No consent judgment shall be entered in an action in which the United States is not
   a party prior to 45 days following the receipt of a copy of the proposed consent
   judgment by the Attorney General and the Administrator.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad
meaning and encompasses all instruments entered with the consent of the parties that have the
effect of resolving any portion of the case.  For example, a document stipulating to dismissal of a
case of any part thereof is within the scope of this language.  Such documents and any associated
instruments must be submitted to the United States and the court for review, notwithstanding any
provisions purporting to maintain the confidentiality of such materials.  The Department
monitors citizen suit litigation to review compliance with this requirement.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes.  *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based).  For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or an environmentally beneficial project payment sufficient to deter future violations, or combinations of the above.

In this case, the proposed consent decree requires, *inter alia*, that Cla-Val submit a payment to a non-party organization to fund environmental project activities that will remediate the environmental harm alleged to have resulted from the allegations in the Notice Letter and Complaint. Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the funds were spent. In a letter attached as Exhibit A, the intended recipient of the funds, the Environmental Nature Center, confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities. The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent judgment.  The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement.  *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party)  The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the

- 2 -

parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications.  *See* 33 U.S.C. §1365(c)(3).

  We appreciate the attention of the Court.  Please contact the undersigned at 202-304-2636 if you have any questions.


       Sincerely,

       */s/ Joseph Manning*

       Joseph Manning, Attorney
       U.S. Department of Justice
       Environment and Natural Resources Division
       Law and Policy Section
       P.O. Box 7415
       Washington, D.C.  20044-4390

cc:  Counsel of Record via ECF

# EXHIBIT A

**ENVIRONMENTAL NATURE CENTER**

Bryn Bowen
United States Department of Justice
Bryn.Bowen@usdoj.gov

Subject: Representation by the Environmental Nature Center Regarding Griswold Industries'
Environmentally Beneficial Project

Dear Mr. Bowen,

1. On behalf of the Environmental Nature Center (ENC), I am writing to provide the information requested by the Department of Justice concerning the consent judgment between Orange County Coastkeeper and Griswold Industries (Civil Case No 8:24-cv-02162). As the ENC is a beneficiary of Griswold Industries' Environmentally Beneficial Project (as outlined in Section H.29 of the consent decree), we offer the following representations:

2. The Environmental Nature Center (ENC) is a 501(c)(3) tax-exempt organization. Our tax ID number is

3. We have read the proposed consent judgment in Civil Case No 8:24-cv-02162

4. We will ensure that any funds received under the proposed consent judgment will be used solely for the purposes specified within the consent judgment.

5. No funds received under this judgment will be used for political lobbying activities.

6. Upon completion of the expenditure of the funds provided by this settlement, we will submit a letter to the Court, the United States, and the parties, detailing how the funds were used.

7. The attached project description provides a detailed outline of how the ENC plans to allocate the funds to enhance watershed education and foster environmental stewardship in our community.

**Project Description:**
The Environmental Nature Center (ENC) will utilize the funds to create interactive tools and demonstrations focused on watershed education. These resources will enable students and the broader community to better understand the relationship between land use and ocean health, emphasizing the impact of human activities on watersheds and local ecosystems. The project includes the following components:

- **Interactive Educational Displays and Demonstrations:** Development of exhibits that highlight watershed management and water conservation practices.
- **Models and Materials:** Acquisition of tools that allow students to visualize water's journey from land to ocean, enhancing their understanding of water systems.
- **Instructional Programs and Resources:** Creation of educational activities aimed at deepening students' knowledge of watersheds and fostering environmental stewardship.
- **Instructional Materials:** Purchase of essential supplies such as salinity gauges, nitrate and pH test strips, microscopes, and water quality testing kits for hands-on learning experiences.
- **Staffing:** Support for ENC's educators who lead engaging activities that promote water-use efficiency and conservation through field trips and outreach events.

- **Professional Development:** Funding for workshops that train K-12 teachers in innovative water conservation techniques, equipping them to integrate these lessons into their classrooms.
- **Traveling Naturalist Program:** Expansion of outreach efforts to provide environmental education programs to schools throughout Orange County, ensuring equitable access for all students.
- **Community Engagement:** Support for ENC's Community Engagement Coordinator, who partners with underserved schools to offer free access to environmental programs.
- **Scout Program Materials:** Provision of supplies for water education activities in programs like "Brownies Wonders of Water," promoting early conservation ethics in young students.

These funds will help the ENC continue offering transformative educational experiences that inspire a commitment to environmental stewardship in our community. We appreciate this opportunity to enhance our programs and look forward to the positive impact this project will have on students throughout Orange County.

Please do not hesitate to reach out if you require any additional information. We will be pleased to provide further details or clarification as needed.

Sincerely,

Bo Glover
President & CEO
Environmental Nature Center
1601 E. 16th Street
Newport Beach, CA 92663
949-645-8489 ext. 101
bo@encenter.org